# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

John L. Corrigan, Jr.,

      Plaintiff,

v.

City of Savage, a municipal entity; Kyle
Klapperick, Police Officer; Alexandria
Marklowitz, Police Officer; Amber Bernier,
a private individual; Nelson Rhodus,
Assistant Scott County Attorney; Christian
Wilton, Judge; Lynn Hanson, Probation
Officer; Gabe Kerkaert, Police Officer;
Edward Culbreth, Officer; Ashley Uthe,
Police Officer; Luke Hennen, Scott County
Sheriff; and Scott County, a municipality,

      Defendants.

Civ. No. 18-2257 (ADM/BRT)

**REPORT AND
RECOMMENDATION**

---

John L. Corrigan, Jr., 1705 3rd Ave. W., Apt. #6, Shakopee, MN 55379, *pro se*.

Daniel P. Jurtz, Esq., League of Minnesota Cities, counsel for City of Savage Defendants.

Lateesa T. Ward, Esq., Ward & Ward PC, counsel for Defendant Bernier.

Anna L. Yunker, Esq., and William J. Everett, Esq., Everett & VanderWiel, PLLP,
counsel for Scott County Defendants.

Kathryn Iverson Landrum, Esq., Minnesota Attorney General's Office, counsel for
Defendant Judge Wilton.

---

BECKY THORSON, United States Magistrate Judge.

## INTRODUCTION

This matter is before the Court on Defendant Judge Christian Wilton's Motion to Dismiss Amended Complaint (Doc. No. 35), Defendants City of Savage, Police Officer Kerkaert, Police Officer Culbreth, Police Officer Kyle Klapperick, Police Officer Alexandria Marklowitz, and Police Officer Uthe's Motion for Judgment on the Pleadings (Doc. No. 45), Defendants Nelson Rhodus, Luke Henne, Lynn Hanson, and Scott County's Motion for Judgment on the Pleadings (Doc. No. 50), and the Motion for Judgment on the Pleadings of Defendant Amber Bernier (Doc. No. 69). The motions have been referred to this Court for a Report and Recommendation under 28 U.S.C. § 636 and D. Minn. LR 72.1. (Doc. No. 14.) On November 8, 2018, this Court held a hearing on the matter in which counsel appeared on behalf of Defendants and Plaintiff appeared *pro se*. (*See* Doc. No. 84.) For the reasons stated below, this Court recommends that Defendants' motions be granted and Plaintiff's *pro se* Complaint be dismissed.

## BACKGROUND

The facts underlying Plaintiff Corrigan's case all relate in one way or another to an incident that occurred while driving on August 3, 2016, which resulted in Corrigan being charged and convicted of stalking, in violation of Minn. Stat. § 609.749. (*See* Doc. No. 11, Aff. of Kathryn Iverson Landrum ("Landrum Aff.") ¶ 3, Ex. B, *State of Minnesota v. John Louis Corrigan*, Court File No. 70-CR-16-14594 (Scott Cnty. Dist. Ct. July 2, 2018).) The facts, as described by the Minnesota Court of Appeals, are as follows:

Amber Bernier was homebound from work on an evening in August 2016 and heading eastward on Highway 169 north when she encountered John Corrigan in Shakopee. Soon the three-lane roadway would split in two, with cars in the left lane bending north (on Highway 169), cars in the right lane continuing straight (on Highway 13), and cars in the middle lane having the option to choose either route. Corrigan's car was in the far left lane, and Bernier's was immediately behind it. Bernier moved to the center lane, intending to continue straight and avoid the northward bend. Corrigan also changed lanes in front of her. Bernier then pulled into the far right lane and passed Corrigan to her left. Neither liked the other's driving. As Bernier passed, each driver shot angry glances at the other.

Bernier continued in her lane toward the right as the highway divided. And at first Corrigan followed the middle lane toward the left, traveling on Highway 169 north after the point where the middle lane widened and then split in two. But then Bernier saw in her rearview mirror that Corrigan abruptly changed course and crossed the double white lines to continue in Bernier's direction. And he next moved into the right lane directly behind her onto Highway 13. He followed so closely that there was no room for any other car to fit between them.

Highway 13 also soon divided; drivers can continue straight, heading east, or they can bear right, heading south. Bernier moved into the right-hand lane heading south, and Corrigan followed closely behind her. After Bernier began south, she moved two lanes to her left, into the left-turn lane of the first intersection. She saw in her mirror that Corrigan, too, crossed over two lanes and entered the turn lane, cutting in front of another car to position himself behind Bernier. By this point, Bernier was frightened.

Rather than turn left, Bernier attempted to evade Corrigan by pulling out of the turn lane and back into southbound traffic, moving straight through the intersection. She saw in her mirror that Corrigan likewise changed course, following right behind her. Bernier continued through other intersections until she came to McColl Drive, where she moved into the left-turn lane and turned east. She saw in her mirror that, again, Corrigan did the same, following her.

As Bernier traveled east on McColl, she received a call from her husband. Bernier told him that she was being followed, and her husband advised her to call the police. She pulled into the driveway of the Savage

3

fire department and stopped. Corrigan pulled beside her and stopped. Bernier lowered her window and told Corrigan to stop following her. Corrigan stared at her but said nothing. Then Bernier yelled, "Stop following me or I'm going to call the police!" Corrigan responded, "I figured you already would have."

Bernier dialed 9-1-1 and spoke with a dispatcher, who stayed on the line and directed her to the nearby Savage police station. Bernier parked outside the front doors of the station, and Corrigan followed her and parked across the street. Police arrived.

(*Id.* at 2–4.)

Corrigan describes what happens next in his Amended Complaint. Police Officer Kerkaert arrived on the scene and began asking Corrigan questions. (Am. Compl. ¶ 23.) Corrigan placed his passport on the hood of his vehicle. (*Id.*) Police Officers Edward Culbreth, Alexandria Marklowitz, Ashley Uthe, and Sergeant Kyle Klapperick then arrived on scene. (Am. Compl. ¶¶ 24, 26.) Uthe and Marklowitz interviewed Bernier, while the other officers tried to speak to Corrigan. (*Id.*) Corrigan was given a citation for fifth degree assault and then left the scene. (Am. Compl. ¶ 27.) Assistant County Attorney Nelson Rhodus later amended the charge to stalking under Minn. Stat. § 609.749, subd. 2(2). (Am. Compl. ¶ 33; Doc. No. 53, Decl. of Anna L. Yunker ("Yunker Decl.") ¶ 3, Ex. 3 at 1.)

Judge Christian Wilton presided over Corrigan's criminal case and following the jury-trial conviction, sentenced him to 120-days in jail. (Am. Compl. ¶¶ 36–37.) Before the sentencing, Corrigan had filed a post-trial motion requesting a new trial and vacation of the judgment, arguing that the Minnesota stalking statute was unconstitutional; that

Bernier had committed perjury during her trial testimony; that Rhodus had improperly coached Bernier prior to her testimony; and that Rhodus knew Bernier's trial testimony was false. (*See* Yunker Decl. ¶ 3, Ex. 4 at 1–2.) Judge Wilton denied the motions (*Id.* at 5.) Also prior to sentencing, Judge Wilton ordered Scott County Community Corrections to prepare a Pre-Sentence Investigation ("PSI") report. (Am. Compl. ¶ 37.) The report was completed by Probation Officer Lynn Hanson (*Id.* at ¶ 38.) Hanson concluded that Corrigan would not be amenable to probation and recommended that he serve 120 days in the Scott County Jail. (*Id.*) Judge Wilton imposed the 120-day sentence as recommended. Corrigan appealed the conviction and sentence; the Minnesota Court of Appeals affirmed, and the Minnesota Supreme Court denied certiorari.

On August 2, 2018, Corrigan filed a Complaint *pro se* with this Court. (Doc. No. 1.) The Complaint was thereafter amended on September 5, 2018. (Doc. No. 23, Am. Compl.) Corrigan has sued the City of Savage, Scott County, Police Officers Kyle Klapperick, Alexandria Marklowitz, Gabe Kerkaert, Edward Culbreth, and Ashley Uthe, Scott County Sheriff Luke Hennen, Probation Officer Lynn Hanson, Assistant Scott County Attorney Nelson Rhodus, Judge Wilton, and the victim of the underlying stalking charge, Amber Bernier. The Amended Complaint contains federal civil rights claims for relief "under 42 U.S.C. § 1983 and rais[es] supplemental state-law claims concerning the actions . . . in unlawfully arresting, maliciously prosecuting, denying due process, prosecutorial misconduct, denying access to the courts and cruel and unusual

punishment." (Am. Compl. ¶ 1.) Corrigan also alleges the "actions and conduct of the defendants are the result of a policy, practice, custom, and deliberate indifference on the part of the Defendants City of Savage and Scott County." (*Id.*) In addition, he alleges that Defendant Bernier, although a private individual, "was acting for the state which exercised coercive power or significant encouragement, either overt or covert, where the choice to continue is deemed to be that of the state," and that Bernier "acted jointly with Defendant Police Officers and Defendant Rhodus to deprive the Plaintiff of his constitutional rights to be free from unlawful seizure and his right to due process through a fair trial." (*Id.*)

Corrigan requests both compensatory and punitive damages for the following asserted claims in this case:

- Against the Defendant City Police Officers and Defendant Bernier (the victim), Corrigan asserts a violation of his First, Fourth, Fifth, and Fourteenth Amendment rights relating to free speech, unlawful arrest, right to remain silent, retaliatory prosecution, and malicious prosecution (Count I).

- Against the City of Savage, Corrigan asserts a violation of his First, Fourth, Fifth, and Fourteenth Amendment rights relating to deficient "training, supervision, investigation, or discipline" regarding the stop, detention, arrest, and charge. (Count II).

- Against Assistant Scott County Attorney Nelson Rhodus, Corrigan asserts a violation of procedural due process (Count III), and claims that the stalking statute under which he was charged is unconstitutional (Count V).

- Against Probation Officer Lynn Hanson, Corrigan asserts a violation of the Eighth Amendment by imposing a cruel and unusual punishment of 120 days in jail (Count IV).

- Against Scott County Sheriff Luke Hennen, Probation Officer Lynn Hanson, and Scott County, Corrigan asserts a violation of his First, Sixth, Eighth, and Fourteenth Amendment rights regarding "training, supervision, investigation, or discipline in the areas of . . . provid[ing] prisoners with 'adequate law libraries or adequate assistance from persons trained in the law'" and "[t]he proper exercise of probation officer powers, including but not limited to the investigation, analysis, and recommendation of the Pre-Sentence Investigation report" (Count VI).

- Against all of the Defendant City Police Officers, Corrigan asserts state law claims for false arrest, false imprisonment, denial of due process, intentional infliction of emotional distress, and malicious prosecution; against Defendant Rhodus, Corrigan asserts a claim for prosecutorial misconduct; against the victim Defendant Bernier, Corrigan asserts claims for misrepresentation, perjury, and intentional infliction of emotional distress; and against Defendants Hennen, Hanson, the City of Savage, and the Scott County, Corrigan asserts a claim for intentional infliction of emotional distress (Count VII).

Against Judge Wilton, Plaintiff seeks declaratory relief (no monetary relief) for a violation of procedural due process (Count III), and for violation of the Eighth Amendment by imposing a cruel and unusual punishment of 120 days in jail (Count IV).

## DISCUSSION

### A. Standard of Review

In deciding a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true all factual allegations in the complaint and view them in the light most favorable to the Plaintiff. *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 740 (8th Cir. 2002). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of*

*Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 556. Whether a complaint states a claim is a question of law. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). In addition, this court notes that *pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). However, even a *pro se* complaint must allege facts, and not just bare, unsupported, legal conclusions. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) ("Although it is to be liberally construed, a *pro se* complaint must contain specific facts supporting its conclusions.").

Judgment on the pleadings is appropriate when there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Porous Media Corp.*, 186 F.3d at 1079. In making this determination, the court must "accept as true all factual allegations set out in the complaint and . . . construe the complaint in the light most favorable to the plaintiff." *Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (quotations omitted). When deciding a motion for judgment on the pleadings, "the court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010); *see also Fraenkel v. Messerli & Kramer, P.A.*, No. Civ. 04-1072 (JRT/FLN), 2004 WL 1765309, at *2 (D. Minn. July 29, 2004).

Defendants have submitted the register of actions in Corrigan's criminal case, a copy of state court decisions in Corrigan's state criminal action along with other state court and appellate filings, and the Minnesota Court of Appeals opinion on Corrigan's appeal. (Doc. No. 11, Aff. of Kathryn Iverson Landrum ("Landrum Aff.") ¶¶ 2 & 3, Exs. A & B; Doc. No. 48, Aff. of Daniel P. Kurtz ("Kurtz Aff.") ¶¶ 3, 6, 7, Exs. B, D, E; Doc. No. 53, Decl. of Anna L. Yunker ("Yunker Decl.") ¶¶ 2, 3. Exs. 2–15).) Corrigan does not dispute the authenticity of these documents. The Court will consider these matters of

public record in deciding Defendants' motions to dismiss and will not convert those motions into motions for summary judgment.[1]

**B. § 1983 Claims**

Corrigan brings § 1983 claims against all of the Defendants for various constitutional violations, brings a *Monell* claims against the City of Savage, Scott County, Scott County Sheriff Hennen, and Probation Officer Hanson, and brings additional state law claims against all of the Defendants except Judge Wilton. The Court will address Corrigan's § 1983 claims as they relate to Judge Wilton, the City Defendants,[2] the County Defendants,[3] and Bernier in turn, and then address the remaining state-law claims. Before doing so, however, given the contentions in the Complaint that the state court proceedings violated Plaintiff's constitutional rights, Plaintiff's claims raise questions of this Court's

---

[1]    The City Defendants also submit a copy of a squad car video. (Kurtz Aff. ¶ 4, Ex. C.) Even though this video was referenced by Plaintiff in his Amended Complaint, this Court did not consider the video in making its decisions on the pending motions. Defendant Bernier submitted a copy of the transcript of the 911 call with the Savage Police Department related to the underlying incident. (Doc. No. 63, Decl. of Lateesa T. Ward ("Ward Decl.") ¶ 2, Ex. 1.) This Court also did not consider this transcript in making its decisions on the pending motions. Copies of Bernier's Harassment documents and trial transcripts were also not considered. (*See* Ward Decl. ¶¶ 3, 4, Exs. 2, 3.)

[2]    The City Defendants include the City of Savage, and Police Officers Kerkaert, Culbreth, Klapperick, Marklowitz, and Uthe.

[3]    The County Defendants include Scott County, Scott County Sheriff Hennen, Probation Officer Hanson, and Assistant Scott County Attorney Rhodus.

subject-matter jurisdiction and whether his claims are barred by the *Rooker-Feldman* doctrine, issues that must be addressed first.

### 1.    Jurisdiction

"Subject matter jurisdiction . . . is a threshold requirement which must be assured in every federal case." *Turner v. Armontrout*, 922 F.2d 492, 493 (8th Cir. 1991). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Application of the *Rooker-Feldman* doctrine is jurisdictional. *Lawrence v. City of St. Paul*, 740 F. Supp. 2d 1026, 1036 (D. Minn. 2010). Defendant Judge Wilton argues that this Court lacks subject-matter jurisdiction over Plaintiff's claims against him under the *Rooker-Feldman* doctrine.[4] This Court disagrees.

Under the *Rooker-Feldman* doctrine, a federal district court lacks subject-matter jurisdiction over a lawsuit brought by plaintiffs who "ha[ve] litigated and lost in state court" and who "essentially invite[] federal courts of first instance to review and reverse unfavorable state-court judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005); *see also District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486–87 (1983) (holding that federal district courts may not exercise judgment over issues that are "inextricably intertwined" with a prior state-court judgment); *Rooker*

---

[4]    Bernier notes that she agrees with the argument raised by Judge Wilton. (Doc. No. 62, Def. Amber Bernier's Mem. of Law in Supp. of Mot. to Dismiss 6, n.2.)

*v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923) (holding that federal district courts have

no appellate jurisdiction over state courts). Although Corrigan asks for "declaratory

judgment for constitutional violations (due process and cruel and unusual punishment) by

Judge Wilton" (Am. Compl at 18, Relief),  he is not asking this Court to reverse or

otherwise set aside his state-court conviction.[5] Therefore, Corrigan "plainly has not

repaired to federal court to undo the [Minnesota] judgment [against him]." *Exxon Mobil

Corp.*, 544 U.S. at 293. Thus, this Court is not deprived of subject-matter jurisdiction by

the *Rooker-Feldman* doctrine.

### 2.    § 1983 Claims against Judge Wilton

Even though this Court has jurisdiction over the claims asserted against Judge

Wilton, the claims should nonetheless be dismissed because Judge Wilton is immune

based on the doctrine of absolute judicial immunity. "The immunity of a judge for acts

---

[5]    While in his claims against Judge Wilton, Corrigan asserts Judge Wilton ruled incorrectly on the issues of probable cause, proper jury instructions, post-verdict motions, a stay motion, and sentencing (Doc. No. 23, Am. Compl. ¶ 37), and this Court would not have jurisdiction to review those rulings, Plaintiff does not seek a reversal of those decisions, but instead a declaration that his constitutional rights have been violated. (*See* Doc. No. 78, Pl.'s Mem. of Law in Opp'n to Def. Judge Christian Wilton's Mem. of Law in Supp. of Mot. to Dismiss 2 ("Plaintiff is not seeking challenges to his state-court decision. Plaintiff was convicted of stalking and spent 79 days in jail of his 120-day sentence. It would do Plaintiff no good to have his conviction overturned – the damage is already done.").) This Court is not altogether certain whether Plaintiff is expecting a declaratory judgment to have an effect on the prior state court decisions, his sentence, or his record. However, looking at the language asserted in the Amended Complaint, Plaintiff has not requested this Court to reverse or otherwise set aside his state-court conviction.

within his jurisdiction has roots extending to the earliest days of the common law." *Imbler v. Pachtman*, 424 U.S. 409, 423 n.20 (1976). "[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). "The doctrine therefore applies to suits for injunctive relief as well as claims for money damages." *Edlund v. Montgomery*, 355 F. Supp. 2d 987, 990 (D. Minn. 2005). In addition, "judicial immunity is not overcome by allegations of bad faith or malice," *Mireles*, 502 U.S. at 11, and it "applies even when the judge is accused of acting maliciously and corruptly[.]" *Pierson v. Ray*, 386 U.S. 547, 554 (1967). Allegations of conspiracy are also insufficient to overcome the immunity. *See Moses v. Parwatikar*, 813 F.2d 891, 892–93 (8th Cir. 1987).

Both Corrigan's procedural due process claim (Count III) and his Eighth Amendment claim (Count IV) relate exclusively to Judge Wilton's decisions made as a judge presiding over Plaintiff's criminal case. Judge Wilton was acting within his jurisdiction when he made the statements and rulings that Corrigan complains about, including the imposition of the 120-day sentence. *See* Minn. Stat. § 484.01, subd. 1 (stating that state district courts have original jurisdiction in all civil and criminal cases). Any allegations of conspiracy, bad faith, malice, or fraud do not change the result. Judge Wilton is entitled to absolute judicial immunity against Corrigan's claims.

The fact that Corrigan has sued Judge Wilton only in his official capacity and only for declaratory relief does not defeat the immunity in this instance. Traditionally, claims

for prospective injunctive relief have been permitted pursuant to 42 U.S.C. § 1983 against judicial officers acting in their official capacities. *See Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984). However, after *Pulliam*, Congress enacted the Federal Courts Improvement Act of 1996 ("FCIA"), Pub.L. No. 104–317, and legislatively reversed *Pulliam* in several important respects. Relevant here, the FCIA amended 42 U.S.C. § 1983 to state that ". . . in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983 (amended Oct. 19, 1996 by Pub.L. 104–317, Title III, § 309(c), 110 Stat. 3853). In addition, claims for declaratory and equitable relief "[are] not appropriate where an adequate remedy at law exists." *Schlegel v. Holder*, No. 13-cv-3251, 2014 WL 12607718, at *4 (D. Minn. 2014). "An adequate remedy at law exists when the acts of a judicial officer can be reviewed on appeal or by extraordinary writs." *Id.* (citing *Mullis v. U.S. Bankr. Court of the Dist. of Nev.*, 828 F.2d 1385, 1392–94 (9th Cir. 1987))[6]; *see also*

---

[6]     In *Mullis*, the court stated:

> There is no need to carve out an exception to judicial immunity to permit declaratory and injunctive relief against federal officers. Should a federal judge . . . violate a litigant's constitutional rights in a proceeding pending in federal court, Congress has provided carefully structured procedures for taking appeals . . . . To allow an action for declaratory and injunctive relief against federal officials who would be entitled to judicial immunity from damages merely engenders unnecessary confusion and multiplicity of litigation.

(Footnote Continued on Next Page)

*French v. Lewis*, 163 F.3d 601 (Table), 1998 WL 702294, at *1 (8th Cir. Oct. 9, 1998) (unpublished opinion) (affirming dismissal of plaintiff's prospective injunctive claims against a presiding judge in plaintiff's criminal proceeding where there was no indication that no adequate remedy at law existed). Because Corrigan had an adequate remedy at law—including the state court appeal process—to review the rulings by Judge Wilton that he now challenges, and because Corrigan does not allege that Judge Wilton violated a declaratory decree or that declaratory relief was unavailable, either the doctrine of absolute judicial immunity bars Corrigan's suit against Judge Wilton—*see, e.g.*, *Reilly v. Weiss*, No. 97-CV-05883, 1998 WL 1110695, at *1, n.2 (D.N.J. June 15, 1998), *aff'd*, 189 F.3d 464 (3d Cir. 1999); *see also Moore v. Brewster*, 96 F.3d 1240, 1243–44 (9th Cir. 1996) (concluding that the judicial immunity extends to § 1983 actions for declaratory and injunctive relief), *superseded by statute on other grounds*; *Rivera v. Green*, 775 F.2d 1381, 1384 (9th Cir. 1985) (applying absolute judicial immunity to a justice of the peace for acts performed in his official capacity)—or the declaratory relief that Corrigan seeks is not appropriate. *See Schlegel*, 2014 WL 12607718, at *4 (stating declaratory and equitable relief not appropriate); *see also Davies v. Doi*, No. 08-00548, 2009 WL

_____

(Footnote Continued from Previous Page)

828 F.2d at 1394 (emphasis removed). This Court finds this logic equally applicable to state court judges and state court appeals processes as well.

1561579, at *3 (D. Haw. June 2, 2009) (stating "absolute judicial immunity affords immunity from suits based on judicial acts regardless of what type of relief Plaintiff sought[,]" and even if the judge was not entitled to judicial immunity, the plaintiff "ha[d] an adequate remedy at law through his pending State appeal"). For these reasons, Counts III and IV against Judge Wilton should be dismissed.[7]

### 3.    § 1983 Claims against the City Defendants

Corrigan asserts violations of his First, Fourth, Fifth, and Fourteenth Amendment rights against the City Police Officers "relating to free speech, unlawful arrest, right to

---

[7]    Even if Judge Wilton were not immune from Corrigan's claims, the claims should nevertheless also be dismissed for failure to state a claim. Corrigan asserts that Defendant Judge Wilton violated his due process rights. However, Corrigan does not explain in any meaningful way what was deficient about the process he received. Instead, public records demonstrate that Corrigan was provided with notice and an opportunity to be heard on all issues pertaining to his criminal case. (*See* Doc. No. 11, Aff. of Kathryn Iverson Landrum ("Landrum Aff.") ¶¶ 2 & 3, Exs. A & B.) Corrigan's claim seems to be based on alleged "bias and prejudice" by Judge Wilton in his rulings. (Am. Compl. ¶ 37.) But, the Minnesota Court of Appeals already rejected Corrigan's claims of impartiality. (Landrum Aff. ¶ 3, Ex. B at 5–6.) Because Corrigan has not plausibly pled a procedural due process claim against Judge Wilton, that claim should be dismissed.

Corrigan also asserts that Defendant Judge Wilton violated his Eighth Amendment rights against cruel and unusual punishment when he sentenced Corrigan to 120 days in jail. The Eighth Amendment, however, "does not require strict proportionality between crime and sentence but rather forbids only extreme sentences that are grossly disproportionate to the crime." *Graham v. Florida*, 560 U.S. 48, 59–60 (2010) (quotations omitted). Courts uphold far longer sentences for low-level offenses. *See, e.g.*, *Harmelin v. Michigan*, 501 U.S. 957, 994–96 (1991) (upholding life without parole sentence for possessing cocaine); *Rummel v. Estelle*, 445 U.S. 263, 285 (1980) (upholding life sentence for obtaining money by false pretenses). Therefore, Corrigan's Eighth Amendment claim should be dismissed as a matter of law.

remain silent, retaliatory prosecution, and malicious prosecution," and against the City of Savage relating to deficient "training, supervision, investigation, or discipline" regarding the stop, detention, arrest, and charge. (Am. Compl. §§ 42, 43 (Counts I & II).)

### a.   *Heck v. Humphrey* – Fourth and Fourteenth Amendments - Unlawful Arrest and Malicious Prosecution

Corrigan asserts § 1983 claims for unlawful arrest and malicious prosecution against the individual City Police Officers in Count I of his Amended Complaint. These claims are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck v. Humphrey*, the Supreme Court said:

> [W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed,[] in the absence of some other bar to the suit.

512 U.S. 477, 487 (1994).[8] A judgment in favor of Corrigan for false arrest or malicious prosecution would necessarily imply the invalidity of his conviction or sentence.

---

[8]     Corrigan argues that *Heck v. Humphrey* does not bar his claims because he had completed his sentence and he is no longer a custodial inmate. This is contrary to current law in the Eighth Circuit. *See Entzi v. Redmann*, 485 F.3d 998, 1003 (8th Cir. 2007) (holding that a plaintiff's § 1983 claims were barred by *Heck*, even though the plaintiff was no longer in custody and a writ of habeas corpus was no longer available to him); *see also Newmy v. Johnson*, 758 F.3d 1008, 1009–12 (8th Cir. 2014) (confirming its position that *Heck* "impose[s] a universal favorable termination requirement on all § 1983

(Footnote Continued on Next Page)

Therefore, his conviction bars his § 1983 claims for false arrest and malicious prosecution and they must be dismissed as a matter of law.[9]

### b.    First Amendment – Retaliatory Prosecution[10]

To the extent Corrigan's First Amendment claim is based on allegedly retaliatory prosecution, that claim fails. "[A] plaintiff asserting a § 1983 claim for retaliatory

---

(Footnote Continued from Previous Page)

plaintiffs attacking the validity of their conviction or sentence").

[9]    Moreover, "[a]n officer has probable cause to make a warrantless arrest when the facts and circumstances are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 816 (8th Cir. 2010) (quotations omitted). Here, the facts are not in dispute, and this Court concludes there was probable cause for Corrigan's citation, charge, and prosecution. Therefore, even if the false arrest and malicious prosecution claims were not barred by *Heck v. Humphrey*, the claims would still fail as a matter of law because the later arrest was supported by probable cause. *See id.* at 816–17 (8th Cir. 2010) (stating that in a Fourth Amendment § 1983 false arrest claim, the relevant inquiry is whether the officers had probable cause to arrest the plaintiff); *see also Devenpeck v. Alford*, 543 U.S. 146, 153–56 (2004) (finding that even if an officer invokes the wrong statute at the time of citation or arrest, probable cause still exists when the facts known to the officer provided probable cause for the violation of some law); *Malady v. Crunk*, 902 F.2d 10, 11–12 (8th Cir. 1990) (holding that a plaintiff's conviction is a defense to a § 1983 false arrest claim). (Corrigan was not "under arrest" upon the arrival of the police in the parking lot as he suggests; instead the police conducted a valid *Terry* stop (see further discussion on the *Terry* stop below).) The same is true for the malicious prosecution claim. *See Harrington v. City of Council Bluffs, Iowa*, 678 F.3d 676, 679 (8th Cir. 2012) ("Sufficient probable cause would defeat the appellees' § 1983 claims based on malicious prosecution.").

[10]    Corrigan also lists "free speech" as part of his Count I First Amendment claim. However, Corrigan alleges no facts that would support any sort of free speech violation. To the extent Corrigan was linking his "free speech" claim with his "right to remain silent" claim, that claim should be dismissed for the reasons stated below.

prosecution must show a lack of probable cause for the underlying charge." *Lawrence*, 740 F. Supp. 2d at 1043 (citing *Hartman v. Moore*, 547 U.S. 250, 265–66 (2006)). The trial court made a finding of probable cause in Corrigan's state-court prosecution, and as previously stated by this Court, the finding of probable cause was supported by the facts alleged in Corrigan's Amended Complaint.[11]

### c.  Fifth Amendment – "right to remain silent"

In Count I, Corrigan alleges constitutional violations "relating to free speech," and the "right to remain silent." (Am. Compl. § 42.) To the extent Corrigan is asserting a claim under *Miranda v. Arizona*, 384 U.S. 436 (1966), the claim fails because *Miranda* warnings are only triggered by a "custodial interrogation." *Id.* at 444. Here, there was no custodial interrogation, but instead was an investigative *Terry* stop.

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that a law enforcement officer, prior to conducting a custodial interrogation, must advise the suspect of his right to be free from compulsory self-incrimination and to the assistance of counsel. Following *Miranda*, the Supreme Court held in *Terry v. Ohio*, 392 U.S. 1 (1968), that a police officer with reasonable suspicion that criminal activity is afoot may briefly detain a suspect to investigate the circumstances giving rise to that suspicion. "Typically, this

---

[11]    Corrigan admits to following Bernier for approximately fifteen minutes, admits that when she stopped to question why he was following her, he stated "that the police should be called,"—a state court record indicates that he responded "I figured you would've [called the police] eventually" (Kurtz Aff. ¶ 6, Ex. D at 3)—and admits that

(Footnote Continued on Next Page)

means that the officer may ask the detainee a moderate number of questions to determine

his identity and to try to obtain information confirming or dispelling the officer's

suspicions." *Berkemer v. McCarty*, 468 U.S. 420, 439–40 (1984). Therefore, Corrigan's

allegation that he was not free to leave during the initial questioning by the officers does

not mean he was in custody (or under arrest as Corrigan claims) for *Miranda* purposes.

*See United States v. Pelayo-Ruelas*, 345 F.3d 589, 592 (8th Cir. 2003) (rejecting

defendant's contention that a person is in custody for *Miranda* purposes whenever a

reasonable person would not feel free to leave); (*see* Am. Compl. ¶ 24 ("Until the citation

and passport were handed over to the Plaintiff, he was not free to leave.")). And because

"[n]o *Miranda* warning is necessary for persons detained for a *Terry* stop," *United States

v. McGauley*, 786 F.2d 888, 890 (8th Cir. 1986), Corrigan's *Miranda* rights were not

violated here.

 The Fifth Amendment also protects against coerced confessions. Corrigan alleges

that he was "harassed, intimidated, threatened and insulted throughout the questioning."

(Am. Compl. ¶ 25.) If Corrigan was meaning to assert a Fifth Amendment violation on

this basis, his claim fails for at least two reasons. First, Corrigan alleges no confession

(nor was there one) that could have been coerced. And second, Plaintiff's one-line

allegation in his Amended Complaint is conclusory and he alleges no facts that would

---

(Footnote Continued from Previous Page)

Bernier wanted him to stop following her. (Am. Compl. ¶¶ 20, 21, 28.)

plausibly support a finding of harassment, intimidation, threats, insults, or any other sort of coercion.

For these reasons, Corrigan's Fifth Amendment claims should be dismissed.

### d. *Monell* claim

Corrigan asserts a *Monell* claim against the City of Savage in Count II of his Amended Complaint. (Am. Compl. ¶ 43.) Under *Monell v. Department of Social Services*, a government entity may be held liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." 436 U.S. 658, 694 (1978). As this Court has explained above, all of Corrigan's claims against all of the City of Savage Defendants (i.e., Police Officers) must be dismissed. Therefore, the City cannot be held liable under *Monell*. *See, e.g.*, *Whitney v. City of St. Louis, Mo.*, 887 F.3d 857, 861 (8th Cir. 2018) ("[A]bsent a constitutional violation by a city employee, there can be no § 1983 or *Monell* liability for the City.").

Further, even if any of the claims against the City Defendants survived, to maintain a claim that "a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by policymakers." *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 390 (8th Cir. 2007) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). The city policy or custom must be the

"moving force" behind the constitutional violation. *Monell*, 436 U.S. at 694. Corrigan has not pleaded facts that would give rise to an inference that the problems he complains of are widespread or persistent, or that the City has a history of deliberate indifference toward training, supervision, investigation, or discipline relating to the areas of lawful stops, detention, arrests, or charging offenses. He has also alleged no facts supporting that the City was on notice that the Defendant Police Officers or other officers had a propensity to commit unconstitutional acts or that their training program was so inadequate that it was likely to result in constitutional violations. An "isolated incident" without notice of the misconduct cannot support a claim that the City was deliberately indifferent to unconstitutional policies, patterns, practices, and customs by its police force, nor does it support a failure to supervise or train claim. *Szabla*, 486 F.3d at 393*; see also Larkin v. St. Louis Hous. Auth. Dev. Corp.*, 355 F.3d 1114, 1117 (8th Cir. 2004) (stating evidence of notice is required for a failure-to-train claim); *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999) ("A single incident normally does not suffice to prove the existence of a municipal custom."); *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997) (stating notice is required for a failure-to-supervise claim). Therefore, Count II of Plaintiff's Amended Complaint—the *Monell* claim against the City of Savage—fails to state a claim and should be dismissed.

### 4.    § 1983 Claims against the County Defendants

Among the many claims asserted by Corrigan are claims against Scott County and some of its employees, including the Scott County Sheriff, the probation officer who performed Corrigan's Pre-Sentence Investigation, and the prosecutor who brought the stalking charges against him and prosecuted the state criminal case.

### a.    § 1983 Claims against Assistant Scott County Attorney Nelson Rhodus

Corrigan asserts that Scott County Attorney Rhodus violated his Fifth and Fourteenth Amendment rights to due process by amending the charge against him from fifth degree assault to stalking; by meeting with Bernier prior to her testimony at trial; and by failing to correct Bernier's allegedly false testimony at trial (Count III). Corrigan also asserts a claim against Rhodus in his official capacity based on an allegation that the Minnesota stalking statute is unconstitutional (Count V).

### (i)    Absolute Prosecutorial Immunity

State prosecutors are protected by absolute immunity against § 1983 claims arising from "the initiation and pursuit of criminal prosecution, including presentation of the state's case at trial." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). "[A]bsolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 419 n.13 (1976)). When absolute immunity bars a suit, "dismissal under Rule 12(b)(6) is appropriate." *Id.*

23

Corrigan's allegations that Rhodus violated his rights by amending the criminal complaint, meeting with Bernier prior to trial, and presenting false testimony at trial are all within the scope of prosecutorial conduct protected by absolute immunity. *See Imbler*, 424 U.S. at 413, 430 (holding that a prosecutor's actions "in presenting the State's case" are protected by absolute immunity); *Sample*, 836 F.3d at 916 ("[A]llegations of . . . improper motive in the performance of prosecutorial functions do not defeat the protection of absolute immunity."); *Reasonover v. St. Louis Cnty.*, 447 F.3d 569, 580 (8th Cir. 2006) (stating that even if a prosecutor "knowingly presented false, misleading, or perjured testimony, . . . he is absolutely immune from suit"); *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996) (stating that absolute immunity applies to "other conduct that is intimately associated with the judicial process"); *Williams v. Hartje*, 827 F.2d 1203, 1209–10 (8th Cir. 1987) (finding that charging decisions are protected by prosecutorial immunity).

Corrigan argues that Rhodus is not entitled to absolute immunity because he acted in an "investigatory capacity" when he met with Bernier prior to trial. This argument fails because meeting with witnesses in preparation for their testimony at trial is not an investigatory function. *See Reasonover*, 447 F.3d at 580 ("For a lawyer to properly try a case, he must confer with witnesses, and conduct some of his own factual investigation."); *Brodnicki*, 75 F.3d at 1267 (stating that the question is "whether the act was closely related to [the prosecutor's] role as an advocate"). And Corrigan has pled no

24

facts that would support Rhodus was performing investigatory functions that would fall into the category of "police work." *See Brodnicki*, 75 F.3d at 1267. He likewise has pled no facts that would support that Rhodus' had a retaliatory motive when making his charging decision. Accordingly, the claims asserted in Count III of Corrigan's Amended Complaint against Rhodus must be dismissed.

**(ii)** ***Heck v. Humphrey* – constitutionality of stalking statute**

In Count V of his Amended Complaint, Corrigan makes the claim that the stalking statute he was charged under (Minn. Stat. § 609.749) is unconstitutional. (Am. Compl. ¶ 46; *see also id.* ¶¶ 40–41.) As stated above, under *Heck v. Humphrey*, a plaintiff's § 1983 claims must be dismissed when "judgment in favor of the plaintiff would necessarily imply invalidity of the plaintiff's state conviction or sentence." *Wilson v. Lawrence Cnty., Mo.*, 154 F.3d 757, 760 (8th Cir. 1998). In such cases, no cause of action under § 1983 exists "unless and until . . . [the] conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Willams v. Schario*, 93 F.3d 527, 529 (8th Cir. 1996) (quotations omitted). If none of those things has occurred, a plaintiff's § 1983 claim is barred "if he contends that the statute under which he was convicted is unconstitutional," *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003), because finding in plaintiff's favor would "imply invalidity of the plaintiff's state conviction or sentence." *Wilson*, 154 F.3d

25

at 760; *see Green v. Grampre*, 388 F. App'x 437, 438 (5th Cir. 2010) (stating that "[t]o the extent that Green seeks to challenge the constitutionality of the Texas statutes under which he was convicted, his claims amount to an attack on his conviction . . . . a successful outcome for Green would imply the invalidity of his criminal conviction . . . . and [his] claims are therefore barred under *Heck*"). Therefore, Count V should be dismissed.[12]

---

[12]    Even if Corrigan's statutory claim were not barred by *Heck v. Humphrey*, his claim fails as a matter of law. First, Corrigan raises an overbreadth claim under the First Amendment. (*See* Am. Compl. ¶ 40 ("The First Amendment "doctrine of substantial overbreadth" allows a person to challenge a stalking statute on the grounds that it may be unconstitutionally applied to legal behaviors").).

> Minnesota law defines "stalking" as –
>
> engag[ing] in conduct which the actor knows or has reason to know would cause the victim under the circumstances to feel frightened, threatened, oppressed, persecuted, or intimidated, and causes this reaction on the part of the victim regardless of the relationship between the actor and victim.

Minn. Stat. § 609.749, subd. 1. The statute makes it a crime if a person stalks another by "follow[ing], monitor[ing], or pursu[ing] another, whether in person or through any available technological or other means[.]" *Id.*, subd. 2(2). As explained by the Minnesota Court of Appeals in *State v. Stockwell*, "[b]ecause the statutory provision is specific as to the forms of conduct proscribed, because it requires that the actor knows her conduct will cause fear and causes that reaction, and because it is subject to a limiting construction, we conclude that the degree of overbreadth is not sufficiently substantial to require a holding that the statute is unconstitutional on its face." 770 N.W.2d 533, 539–40 (Minn. Ct. App. 2009). At the time of the *Stockwell* decision, an earlier version of the stalking statute was in effect. However, the provisions at issue in this case are substantially similar to those that were in effect in *Stockwell*.

(Footnote Continued on Next Page)

### b.    § 1983 Claims against Probation Officer Lynn Hanson

### (i)    Absolute Immunity

Probation Officer Lynn Hanson is protected by absolute immunity. Corrigan

claims that Hanson violated his Eighth and Fourteenth Amendment rights by

---

(Footnote Continued from Previous Page)

Corrigan also alleges that the statute is "unconstitutional as it is applied to Plaintiff." (Am. Compl. ¶ 41.) He claims he followed Bernier for approximately fifteen minutes in a "non-aggressive and non-threatening manner," and "[t]his is legal behavior and not proscribed by the statute." (*Id.*) The public record reflects that Corrigan's conviction for stalking was based on his driving conduct, which is "outside the protections of the First Amendment because, even assuming that [he] intended to convey a particularized message in following and pursuing [Bernier] . . . a reasonable person would not understand the message that appellant was trying to convey when viewing the conduct." *Stockwell*, 770 N.W.2d 533, 540. Because the conduct underlying Corrigan's conviction was not expressive conduct but was "dangerous and intimidating because of its aggressive nature," the as-applied challenge to the statute fails. *See id.* (Corrigan disputes that his conduct was aggressive or intimidating and continues to contest that his conduct caused "fear" in Bernier; however, after hearing all facts and testimony, a jury found that it did, and this was after an opportunity for cross-examination by Corrigan.)

In addition, Corrigan asserts that the stalking statute is unconstitutionally vague in violation of his right to due process. He claims, "[t]he Fifth and Fourteenth amendments guarantee citizens due process rights, including effective notice of the behavior that is criminalized by stalking statutes." (Am. Compl. ¶ 40.) To the extent he is arguing that the statute is vague, the Minnesota Court of Appeals has already determined that it is not. *See Stockwell*, 770 N.W.2d at 541. The court explained that "[t]he statute, when read as a whole, does not criminalize the mere following of a person. Rather, the statute provides sufficient clarity such that an ordinary person could understand what conduct is prohibited." (*Id.*) This Court agrees. Therefore, Corrigan's due process argument fails.

Because there is ample reason, as explained above, to dismiss Count V regarding the constitutionality of the underlying stalking statute, this Court need not address the County Defendants' additional arguments based on collateral estoppel or res judicata.

recommending a 120-day sentence in a Pre-Sentence Investigation report that was

submitted to the state court judge (Count IV).[13] Probation officers perform judicious tasks

when they prepare a presentence report, including evaluating facts, drawing legal

conclusions, and making recommendations that play a significant part in the decision-

making process. Many circuits have now held that "because presentence reports are so

closely associated with the exercise of a judicial function, probation officers who prepare

these reports are entitled to absolute immunity." *Anton v. Getty*, 78 F.3d 393, 396 (8th

Cir. 1996) (citing *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994), *cert. denied*, 514 U.S.

1102 (1995); *Turner v. Barry*, 856 F.2d 1539, 1540–41 (D.C. Cir. 1988) (per curiam);

*Demoran v. Witt*, 781 F.2d 155, 157–58 (9th Cir. 1986); *Hughes v. Chesser*, 731 F.2d

1489, 1490 (11th Cir. 1984); *Spaulding v. Nielsen*, 599 F.2d 728, 729 (5th Cir. 1979));

*see also Abbott v. Oller*, 497 F. App'x 683, 683–84 (8th Cir. 2013) (affirming the finding

that plaintiff's claims against probation officers were barred by absolute immunity).

Accordingly, following the direction of the Eighth Circuit and others, Corrigan's claims

against Probation Officer Lynn Hanson should be dismissed because of absolute

immunity.

---

[13]    Corrigan also lists Hanson in his *Monell* claim (Count VI), which will be
addressed below.

### c.    *Monell* claim

Corrigan asserts a *Monell* claim against Scott County, Scott County Sheriff Luke Hennen,[14] and Probation Officer Lynn Hanson,[15] alleging that the County was deliberately indifferent to policies, patterns, practices and customs, relating to "training, supervision, investigation, or discipline" regarding the provision of "adequate law libraries or adequate assistance from persons trained in the law" to prisoners, and regarding "[t]he proper exercise of probation officer powers, including but not limited to the investigation, analysis and recommendation of the [PSI] report" (Count VI). In other words, Corrigan is raising *Monell* claims about (1) his access to courts, and (2) adequate training for probation officers and their preparation of PSI reports.

---

[14]    Because a claim against a government official in his or her official capacity is the equivalent of a claim against the government entity itself, it is redundant to bring the claim against both Scott County and Sheriff Hennen in his official capacity. *See Banks v. Slay*, 875 F.3d 876, 878 (8th Cir. 2017) ("[A]n official-capacity suit is a suit against a government entity in all respects other than name[.]") (quotations omitted). Because Corrigan has not alleged any specific act or omission against Hennen, the claim against Hennen in his official capacity should be dismissed as redundant, and the claim against him in his individual capacity should be dismissed for failure to state a claim.

[15]    As stated above, Corrigan's claims against Probation Officer Lynn Hanson regarding her PSI report should be dismissed because of absolute immunity. And because Corrigan has pled no specific act or omission that Hanson did with regard to his access-to-courts claim, and because the nature of the failure to train claim is the adequacy of the training provided *to* Hanson and no facts have otherwise been pled showing Hanson's involvement in the training policy or custom, the *Monell* claims asserted against Hanson should be dismissed.

Taking the latter issue first, to hold Scott County liable under § 1983, Corrigan must show that an official policy or custom caused Hanson's unconstitutional conduct. *Monell*, 436 U.S. at 691. However, no constitutional violation occurred regarding the PSI report in Corrigan's underlying criminal case. As noted above (*see* supra n. 7), the 120-day sentence was not in violation of the Eighth Amendment. "Without a constitutional violation by the individual officers, there can be no § 1983 or *Monell* failure to train municipal liability." *Sanders v. City of Minneapolis, Minn.*, 474 F.3d 523, 527 (8th Cir. 2007) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).[16]

Regarding Corrigan's access-to-courts claim, he asserts that "he tried to access the court but was unable because there was no adequate law library nor an adequate system to obtain legal assistance to obtain a court order for work release." (Am. Compl. ¶ 39.) He also asserts that "a meaningful appeal and/or other motions could not be drafted from jail, [so] Plaintiff was forced to hire an attorney to assist in the appeal, work release request and/or other motions." (*Id.*)

---

[16]     This Court notes that the *Monell* claim fails for yet another reason as well – Corrigan has alleged no facts indicating that Scott County was on notice that any of its training programs were inadequate. *See Larkin*, 355 F.3d at 1117 (stating that to prevail on a failure-to-train claim, plaintiff must show notice that the training program was inadequate and likely to result in constitutional violations). Further, in his response brief, Corrigan seems to be attempting to add a *Monell* claim based on Rhodus's conduct in changing the charge to stalking. This claim was not alleged in his Amended Complaint and therefore need not be addressed. However, the Court notes it would fail for the same lack-of-notice reasons and because no constitutional violation occurred when making the charge.

General allegations that a law library is subpar are not sufficient to state a claim. *Sabers v. Delano*, 100 F.3d 82, 84 (8th Cir. 1996). "Instead, the plaintiff must show the lack of a library . . . hindered the plaintiff's efforts to proceed with a legal claim in a criminal appeal, postconviction matter, or civil rights action seeking to vindicate basic rights." *Id.* To establish a cognizable access to courts claim under the Fourteenth Amendment, a plaintiff must show that the alleged denial of access caused actual injury. *Lewis v. Casey*, 518 U.S. 343, 348, 352–53 (1996) (stating that a plaintiff must show that he experienced "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim"). Actual injury occurs when a plaintiff demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). "The right of access to the courts is satisfied if the prisoner has the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Zink v. Lombardi*, 783 F.3d 1089, 1108 (8th Cir. 2015) (quotations omitted).

Here, Corrigan has not alleged a plausible claim that he was denied access to the courts because he has failed to show actual injury. Corrigan's work release request was granted.[17] (*See* Yunker Decl. ¶ 3, Ex. 12.) And Corrigan was able to file a motion to

---

[17]    Further, a request for work release is not one of the three categories of legal claims that can form the basis for an access-to-courts claim. *See Sabers*, 100 F.3d at 84 (listing motions for postconviction relief, appeals of the conviction, and civil rights lawsuits).

vacate his conviction, for a new trial, and was able to file his appeal, among other

motions. (Yunker Decl. ¶ 3, Exs. 4, 10.) Simply because Corrigan felt he needed to hire

an attorney to help with his appeal, and that he accrued legal expenses in doing so, does

not support an access-to-courts claim; instead, because he was represented by counsel on

appeal, he cannot maintain an access-to-courts claim because the attorney provided him

access.[18] *See Entzi v. Redmann*, 485 F.3d 998, 1005 (8th Cir. 2007) (dismissing access-to-

courts claim because inmate was represented by counsel on direct appeal of conviction);

*see also Martinez v. Court of Appeal of Calif., Fourth Appellate Dist.*, 528 U.S. 152, 163

(2000) (concluding the California courts had not deprived the defendant of a

constitutional right when requiring him to accept against his will a state-appointed

attorney). Because Plaintiff has not pled a constitutional violation with respect to his

access-to-courts claim, the *Monell* claim fails. *See Cook v. City of Bella Villa*, 582 F.3d

840, 853 (8th Cir. 2009) ("Absent a constitutional violation, there can be no municipal

liability.").

### 5.    § 1983 Claims against Bernier (the victim)

Corrigan asserts in Count I of his Amended Complaint violations of his First,

Fourth, Fifth, and Fourteenth Amendment rights relating to free speech, unlawful arrest,

right to remain silent, retaliatory prosecution, and malicious prosecution, against

---

[18]    Corrigan does "not claim[] that the appellate lawyer prejudiced his appeal[.]"
(Doc. No. 74, Pl.'s Mem. of Law in Opp'n to Scott County Defendants' Mot. 9.)

Defendant Bernier—the victim of Corrigan's underlying stalking conviction—and the City Police Officers. All claims against the City Police Officers should be dismissed for the reasons explained above.

Although it is not altogether clear, it appears that the claims Corrigan might be asserting against Defendant Bernier are for unlawful arrest, retaliatory prosecution, and malicious prosecution based on her alleged "false, misleading, and perjured testimony" at trial.[19] The claims against Bernier should be dismissed because claims based on her testimony are absolutely immune.

### a.    Absolute Immunity

Corrigan's claims against Bernier mostly appear to stem from her statements made during her testimony at trial. He claims that Bernier's testimony was false, inconsistent, and the product of coercion by the prosecutor in Corrigan's criminal case. (Am. Compl. ¶¶ 35–36.) However, parties and witnesses are immune from subsequent damages liability for their testimony in judicial proceedings. *Rehberg v. Paulk*, 566 U.S. 356, 367 (2012) ("[A] trial witness has absolute immunity with respect to *any* claim based on the witness' testimony.") (citing *Briscoe v. LaHue*, 460 U.S. 325, 330–33 (1983)). And absolute immunity from any § 1983 claim cannot be circumvented by claiming that the witness "conspired to present false testimony or by using evidence of the witness' testimony to

support any other § 1983 claim concerning the initiation or maintenance of a prosecution." *Id.* at 369. Therefore, the claims asserted against Bernier should be dismissed.

### b.    Other reasons

Even if Bernier were not immune from the claims asserted by Corrigan, the claims should still be dismissed for various other reasons. First, as explained above with respect to the claims asserted against the City Police Officers, the unlawful arrest and malicious prosecution claims are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). Second, also as explained above, the claim for allegedly retaliatory prosecution necessarily fails because there was probable cause for the underlying charge. *See Lawrence*, 740 F. Supp. 2d at 1043.

Third, all of Corrigan's § 1983 claims asserted against Bernier, a private citizen, fail because her actions were not performed "under color of law." *See Briscoe*, 460 U.S. at 330. As the Supreme Court has explained, "§ 1983 does not create a remedy for all conduct that may result in violation of 'rights, privileges, or immunities secured by the Constitution and laws.' Its reach is limited to actions taken 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territoy." *Id.* at 329. Corrigan has

---

(Footnote Continued from Previous Page)

[19]    Corrigan's claims relating to "free speech" and the "right to remain silent" have no bearing or relation to any action by Bernier; therefore, if he was trying to assert those

(Footnote Continued on Next Page)

not plausibly pled, nor can he plead, facts showing that Bernier was a state actor at any time. This Court is not required to treat Corrigan's conclusory allegations as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Simply because Bernier made a report to police stating that she was afraid or "met with members of the attorney's office on several occasions" does not create an inference that she was a state actor or that coercion was at play. Therefore, for these additional reasons, Corrigan's claims against Bernier should be dismissed.

## C. State Law Claims

In addition to the federal claims asserted above, Corrigan asserts state-law claims for false arrest, false imprisonment, denial of due process, intentional infliction of emotional distress, and malicious prosecution against all of the Defendant City Police Officers, a claim for prosecutorial misconduct against Defendant Rhodus, claims for misrepresentation, perjury, and intentional infliction of emotional distress against Defendant Bernier, and a claim for intentional infliction of emotional distress against Defendants Hennen, Hanson, the City of Savage, and the Scott County. (Am. Compl. ¶¶ 48–50 (Count VII).) Having recommended dismissal of all of Corrigan's federal claims, this Court recommends that the state law claims be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c).

---

(Footnote Continued from Previous Page)

claims against Bernier, they must be dismissed for failure to state a claim.

Section 1367(c) provides that a district court "may decline to exercise supplemental jurisdiction over a [state law claim arising out of the same case or controversy as a federal claim] if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" *Id.* § 1367(c)(3). Courts look to "the stage of the litigation; the difficulty of the state claim; the amount of time and energy necessary for the claim's resolution; and the availability of a state forum." *Goddard, Inc. v. Henry's Foods, Inc.*, 291 F. Supp. 2d 1021, 1051 (D. Minn. 2003) (quotations omitted). Declining supplemental jurisdiction over pendent state claims is especially appropriate when the dismissal of federal claims occurs early in the proceedings. *See Gregoire v. Class*, 236 F.3d 413, 419 (8th Cir. 2000) ("If the claim giving original jurisdiction is dismissed early in the action, before any substantial preparation has gone into the dependent claims, dismissing or remanding the [state claims] upon declining supplemental jurisdiction seems fair enough.") (internal quotations omitted). This Court recommends that all of Corrigan's federal claims be dismissed. With no scheduling order yet in place, and no discovery having been exchanged, this case is still at an early stage. Accordingly, this Court recommends that the District Court should decline to exercise supplemental jurisdiction over Corrigan's state claims pursuant to § 1367(c)(3), and those claims (Count VII) should be dismissed without prejudice.[20]

---

[20]     In recommending dismissal without prejudice, this Court in no way suggests that the state-law claims have merit or are not otherwise subject to various immunities, bars,

(Footnote Continued on Next Page)

36

## RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED** that:

1.      Defendant Judge Christian Wilton's Motion to Dismiss Amended

Complaint (Doc. No. 35) be **GRANTED**;

2.      Defendants City of Savage, Police Officer Kerkaert, Police Officer

Culbreth, Police Officer Kyle Klapperick, Police Officer Alexandria Marklowitz, and

Police Officer Uthe's Motion for Judgment on the Pleadings (Doc. No. 45) be

**GRANTED**;

3.      Defendants Nelson Rhodus, Luke Henne, Lynn Hanson, and Scott County's

Motion for Judgment on the Pleadings (Doc. No. 50) be **GRANTED**;

4.      The Motion for Judgment on the Pleadings of Defendant Amber Bernier

(Doc. No. 69) be **GRANTED**;

5.      Plaintiff's Amended Complaint (Doc. No. 23), be **DISMISSED** in its

entirety (Counts I, II, III, IV, V, and VI be dismissed with prejudice, and Count VII be

dismissed without prejudice); and

6.      Judgment be entered accordingly.

---

(Footnote Continued from Previous Page)

or other reasons for dismissal.

Date:  January 14, 2019

s/ Becky R. Thorson
BECKY R. THORSON
United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within fourteen (14) days after being served a copy" of the Report and Recommendation. A party may respond to those objections within fourteen (14) days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within **ten days** of receipt of the Report.